**Certiorari Denied, November 1, 2012, No. 33,858**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-121**

**Filing Date: September 17, 2012**

**Docket No. 31,184**

**IN THE MATTER OF THE ESTATE OF
ELIGIO VIGIL, Deceased,**

**BENJAMIN M. DURAN, Individually and
as Personal Representative of the ESTATE
OF PILAR VIGIL,**

> **Plaintiff-Appellant,**

**v.**

**TONY VIGIL, Personal Representative of
the ESTATE OF ELIGIO VIGIL,**

> **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Sheri A. Raphaelson, District Judge**

Ben A. Longwill
Las Cruces, NM

for Appellant

Jane B. Yohalem
Santa Fe, NM

Leof T. Strand
Albuquerque, NM

for Appellee

**OPINION**

1

**VANZI, Judge.**

**{1}** Appellant Benjamin M. Duran (Duran) appeals from a district court order concerning the distribution of the Estate of Eligio Vigil (the Estate). We address three issues on appeal: (1) whether the Legislature intended that statutory allowances that were not claimed while the surviving spouse was alive be transferred to the estate of the surviving spouse after her death, (2) whether the district court erred in finding that Appellant failed to prove that he made tax payments on the homestead owned by the Estate from his personal funds, and (3) whether the district court erred in directing distribution of the remaining assets in the Estate directly to the heirs of the surviving spouse rather than to the personal representative of her estate. We affirm.

**BACKGROUND**

**{2}** The following facts are undisputed. Eligio Vigil (Eligio) died intestate on September 23, 1999. At the time of his death, Eligio was married to Pilar Vigil (Pilar). Eligio and Pilar had no children together as this was a second marriage for each of them, but they each had three children from prior marriages.

**{3}** On May 1, 2000, Pilar petitioned the district court to appoint her as the sole personal representative of the Estate. Eligio's son, Tony Vigil (Tony), responded and also asked to be appointed personal representative and that the administration be supervised. The district court appointed both Pilar and Tony as co-personal representatives of the Estate, ordered unsupervised administration without bond, and ordered that letters of administration be issued to both personal representatives upon qualification and acceptance.

**{4}** Pilar died intestate on May 18, 2006, having survived Eligio by seven years. At the time of her death, the case involving the Estate had been administratively closed due to inaction. Tony filed a motion to reopen on June 9, 2009. The motion stated that Pilar had died, that her son, Duran, was appointed as the personal representative of his mother's estate by the Doña Ana County Probate Court, and that Duran intended to replace Pilar as the co-personal representative of Eligio's Estate. The motion was granted, and the district court entered an order of substitution of co-personal representative and substitution of counsel on July 14, 2009.

**{5}** On May 20, 2010, Tony moved to set aside Duran's appointment of substitution of co-personal representative on the basis that no letters testamentary and acceptance were ever issued to Pilar. Before the motion was ruled on, Duran filed a petition for order of complete settlement adjudicating final distribution of the Estate. The petition provided that the only asset remaining in the Estate of any value was property (Rinconada property). The Rinconada property was sold in March 2010 for $150,000, netting $136,026.12 for the Estate. Duran stated that "disagreements have arisen between the [c]o-[p]ersonal [r]epresentatives" about the distribution of the proceeds from the sale of the property that were "resting in the trust account" of Tony's attorney. The petition requested payment to Pilar's estate of a $30,000 statutory family allowance and a $15,000 personal property

allowance, prior to distribution of the remaining assets pursuant to the Probate Code's rules of intestate succession. *See* NMSA 1978, §§ 45-2-402 (1995), 45-2-403 (1999) (amended 2011). Further, Duran asked to be personally reimbursed in the amount of $3,967.35 for property taxes that he claimed to have paid on the Rinconada property from 2000-2009. Finally, in his capacity as personal representative of Pilar's estate, Duran requested distribution of Pilar's one-fourth intestate share and reimbursement of attorney fees.

{6}     Tony also filed a proposal for distribution of the Estate's remaining assets and an accompanying memorandum in support. The proposal agreed that one-fourth of the intestate share should be distributed to the heirs of Pilar but opposed the granting of either a personal property or family allowance to Pilar's estate. With regard to Duran's claim for reimbursement of the $3,967.35 in property taxes, Tony's proposal asked the district court to consider the request in light of the limitation on presentation of claims set forth in NMSA 1978, Section 45-3-803 (1993) (amended 2011).

{7}     The district court held a hearing on January 3, 2011, and the parties presented evidence and argument. After allowing both sides to submit requested findings and conclusions, the court ruled that (1) the statutory allowance claims by Pilar's estate were precluded by laches and equitable estoppel and that, alternatively, it would be inconsistent with the Legislature's intent to award these allowances to Pilar's estate or heirs of a surviving spouse after her death; and (2) although principles of equity would generally require reimbursement for payment of taxes, in this case, Duran had not provided sufficient evidence that he had actually paid the taxes and, therefore, his claim was denied. The district court also ordered distribution of the Estate by intestate succession and right of representation directly to the heirs. This appeal followed.

## DISCUSSION

{8}     Duran raises three issues on appeal. He contends that (1) the district court erred in denying the family and personal property allowances to the estate of Pilar, (2) the district court erred in denying Duran's claim for reimbursement for property taxes paid by him individually, and (3) the district court erred in directing distribution to the heirs of the surviving spouse rather than to the personal representative of her estate. We take each of Duran's arguments in turn.

## Our Legislature Did Not Intend That Statutory Allowances Be Transferred to the Estate of the Surviving Spouse

{9}     Duran's first issue on appeal is that the district court erred in denying the family and personal property allowances to Pilar's estate. The district court found that, based on the conduct of Pilar and/or her then attorney, her estate's statutory allowance claims were precluded by the doctrines of laches and equitable estoppel. In the alternative, the court ruled that it would be inconsistent with the Legislature's intent that the statutory allowances, which are meant to provide for a surviving spouse during her lifetime, should be awarded

to Pilar's estate or heirs after her death.  We conclude that the Legislature did not intend that the personal allowances be transferred from the estate of the first spouse to the estate of the surviving spouse.  Accordingly, we do not reach the question of whether our Legislature intended to immunize the statutory allowances from all equitable and legal defenses.

**{10}**     Because our review requires us to interpret provisions of the Probate Code, our review is de novo.  *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 7, 148 N.M. 426, 237 P.3d 728.  "The principal objective in the judicial construction of statutes is to determine and give effect to the intent of the [L]egislature."  *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (internal quotation marks and citation omitted).  "The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."  *United Rentals*, 2010-NMSC-030, ¶ 9 (alteration, internal quotation marks, and citation omitted).  Further, we construe the Probate Code in light of its purpose and interpret it "to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it."  *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 14, 150 N.M. 64, 257 P.3d 884 (internal quotation marks and citation omitted).

**{11}**     Sections 45-2-402 and -403 govern the family and personal property allowance provisions at issue in this case.  Section 45-2-402 states, in relevant part, that "[a] decedent's surviving spouse is entitled to a family allowance of thirty thousand dollars ($30,000).  If there is no surviving spouse, each minor child and each dependent child of the decedent is entitled to a family allowance."  Section 45-2-403 similarly provides a personal property allowance in household furniture, automobiles, furnishings, appliances, and personal effects to the surviving spouse in an amount not to exceed $15,000.

**{12}**     Neither provision specifically addresses what happens if the allowances are not claimed prior to the death of the surviving spouse.  What is clear, however, is that these separate allowances are designated specifically for the personal well being of the surviving spouse and are not treated the same as amounts inherited from the decedent by will or intestate succession.  *See* §§ 45-2-402, -403; *In re Estate of Jewell*, 2001-NMCA-008, ¶ 9, 130 N.M. 93, 18 P.3d 334 ("The purpose of the [statutory] allowances is to ensure that a surviving spouse is not left penniless and abandoned by the death of a spouse." (internal quotation marks and citation omitted)).  It would serve no statutory purpose to transfer the allowances to the surviving—and in this case unrelated—heirs of a surviving spouse.  "It is fundamental that statutes will be construed so that their application will be neither absurd nor unreasonable."  *Midwest Video v. Campbell*, 80 N.M. 116, 119, 452 P.2d 185, 188 (1969).  Similarly, "[w]e will not construe a statute to defeat [its] intended purpose."  *Padilla v. Montano*, 116 N.M. 398, 403, 862 P.2d 1257, 1262 (Ct. App. 1993).  Thus, construing the statutory terms in light of the purposes and objectives of the Probate Code's provisions on allowances, we conclude that our Legislature did not intend that statutory allowances

4

unclaimed during the lifetime of the surviving spouse would then be transferred to the heirs of the surviving spouse.

{13}     Duran argues that New Mexico case law supports his position that a surviving spouse's right to statutory allowances automatically passes to her estate following her death. We disagree. The cases cited by Duran hold only that a surviving spouse is entitled to the family and personal property allowance notwithstanding the testator's intent. *See Conley v. Quinn*, 66 N.M. 242, 252, 346 P.2d 1030, 1036 (1959) (holding that, under the prior version of the Probate Code's property allowance provision, a surviving spouse had an unqualified right to the property); *Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 35, 143 N.M. 716, 181 P.3d 708 (holding that "transfers outside of a will cannot offset or preclude the statutory allowances set forth in Sections 45-2-402 and -403"); *Salopek v. Hoffman*, 2005-NMCA-016, ¶ 10, 137 N.M. 47, 107 P.3d 1 (reaffirming that "the family allowance and personal property allowance are not subject to offset or defenses and pass outside the will by operation of law"); *Estate of Jewell*, 2001-NMCA-008, ¶¶ 5, 9 (stating that the Probate Code provides statutory allowances to a surviving spouse on a priority basis exempt from creditors of the estate and that these allowances pass outside the will by operation of law). As we have noted, these cases stand only for the proposition that these allowances "constitute a statutory entitlement for the benefit of *surviving spouses*." *Estate of Jewell*, 2001-NMCA-008, ¶ 9 (emphasis added). Duran has not referred us to any contrary case interpreting the Uniform Probate Code permitting the statutory allowances to enure to the benefit of a surviving spouse's heirs, and we have found none. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Consequently, we hold that consistent with our rules of statutory construction, as well as the strong public policy in favor of awarding the allowances so that a surviving spouse would be adequately taken care of immediately after her spouse's death, our Legislature did not intend these allowances to be transferred from the decedent's estate to the estate and heirs of the surviving spouse. We affirm the district court's ruling.

**Duran's Claim for Reimbursement for Payment of Property Taxes Was Properly Denied**

{14}     The issue that we next address is whether substantial evidence exists to support the district court's finding that there was insufficient evidence to establish that Duran paid the property taxes out of his personal funds. In accordance with our standard of review, the judgment of the district court will not be disturbed on appeal if the findings of fact entered by the court are supported by substantial evidence, are not clearly erroneous, and are sufficient to support the judgment. *See Mascarenas v. Jaramillo*, 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) (stating that it is the appellate court's duty to interpret the district court's findings to determine whether they are sufficient to support the judgment). Further, "when a finding is made against the party with the burden of proof, [the appellate court may] affirm such a finding if it was rational for the fact finder to disbelieve the evidence offered in

support of that finding." *Sosa v. Empire Roofing Co.*, 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct. App. 1990).

**{15}** In his petition for order of complete settlement, Duran stated that he individually claimed reimbursement in the amount of $3,967.35 for property taxes he paid on the Rinconada property from 2000 to 2008. In support of this contention, Duran filed an affidavit claiming that "from the year 2000 to 2009, he paid property taxe[s] on the Eligio Vigil land and house in Rio Arriba County, in the total amount of $3,967.35[.]" At the January 3, 2011 hearing, Duran's counsel argued that Duran was entitled to reimbursement of the taxes paid. The district court disagreed and stated that it had not been adequately assured that the taxes had been paid out of Duran's personal funds and that an accounting of the funds in the Estate would be required to confirm that he had personally paid the taxes. The court said, "Because of the long delay that has gone on and state of the accounting, . . . I cannot feel assured that the money that was used to pay the taxes was money that . . . personally had belonged to . . . Duran and that he has suffered a loss that would require reimbursement." Specifically, the court found that Pilar and her family had possession and control over all the real and personal property of the Estate, that there was no accounting for those assets as required by NMSA 1978, Section 45-3-706 (1983) of the Probate Code, that Pilar misrepresented the value of the real property, which was subsequently sold for six times the amount that Pilar claimed it to be worth, and that the only remaining asset of any value in the Estate after Pilar's death was the real property. Therefore, the district court concluded, the application of equitable principles precluded Duran's claim for reimbursement.

**{16}** Duran's sole argument on appeal is that Tony "fails to cite any evidence justifying the district court's decision" and that he is entitled to reimbursement because his affidavit recited "that he did pay such property taxes from the year 2000 to 2009." We are not persuaded by Duran's argument. As an initial matter, we note that Duran does not challenge any of the district court's findings regarding the misconduct of Pilar and/or her then attorney. Further, but for the bare assertion in his affidavit, Duran provided no evidence that he personally paid taxes on the Rinconada property. Even after the district court expressed its concern at the hearing and suggested an accounting of the funds in the Estate could confirm that Duran personally made the payments, he did not come forth with any additional evidence. We cannot say that the district court erred in finding that Duran failed to carry his burden of proving that he paid the taxes from his personal funds rather than from the Estate's funds.

**Duran Failed to Preserve His Claim That the Share of the Estate Must Be Distributed to Him as Personal Representative of Pilar's Estate**

**{17}** Duran's final argument on appeal is that the district court erred in directing distribution of the Estate directly to the heirs of the surviving spouse rather than to him as the personal representative of Pilar's estate. Tony contends that Duran failed to preserve this claim and, for the reasons that follow, we agree.

**{18}**    "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). Duran asserts that his argument in the district court and his requested findings and conclusions sufficiently preserved the issue for our review. At the conclusion of the January 3, 2011 hearing, counsel for Tony raised the issue of distribution of that part of the Estate inherited by Pilar. The following colloquy took place between counsel and the court:

| | |
|---|---|
| Counsel for Tony: | If you could provide out of Pilar's estate down in Doña Ana County a determination of heirship, file it, so we could rely on it and utilize that. . . . |
| Court: | Right.  Is there any problem doing that? |
| Counsel for Duran: | I would see no reason not to just distribute it to . . . Duran as the personal representative. |
| Counsel for Tony: | He's not the personal representative [of Pilar's estate]. . . . If we gave it to Pilar's estate, we would be exposing ourselves to claims from every one of her heirs. |
| Court: | Has a determination of heirs been made in Pilar's estate in [the probate case]? |
| Counsel for Duran: | No, there's no doubts or controversy. |
| Counsel for Tony: | Hopefully you can just file one and get a conformed copy to me and then we could utilize that in our distribution. |
| Counsel for Duran: | Well, it's in the Probate Court, and they don't have hearings that make these— |
| Court: | No, but it has been filed. |
| Counsel for Duran: | Oh yes.  Yes, in Probate Court in Doña Ana County. |
| Court: | Well alright.  Well can you just get a copy of the determination of heirs from Pilar's probate file and get it to [Tony's counsel] and then he can— |
| Counsel for Duran: | Well, I can get him a copy of the petition which states [who] they are. |

| | |
|---|---|
| Court: | And it's unopposed? Nobody filed anything in opposition to the proposed heirs? |
| Counsel for Duran: | No. Nobody. |
| Court: | Well that should be enough. |
| Counsel for Tony: | Does it list all the heirs? |
| Counsel for Duran: | Of course. |
| Court: | Alright. That should be enough if you relied on that. |

**{19}** Based on the above, it is clear that although Duran's counsel said there was no reason not to distribute to the personal representative, he made no objection when the district court agreed to distribute the property directly to Pilar's heirs and, in fact, he agreed to provide a list of heirs to Tony's counsel. In addition to failing to object, Duran's counsel made no legal argument that distribution to the personal representative was required as a matter of law, and he cited no law to that effect. Preservation serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal, and (2) creating a record from which the appellate court can make informed decisions. *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332. Counsel's failure to timely object to the district court's ruling precludes review by this Court.

**{20}** Further, we are not persuaded that Duran's single proposed conclusion of law stating that "[t]he portion of th[e E]state to which the heirs of Pilar . . . are entitled is properly payable to her [p]ersonal [r]epresentative and not directly to her heirs" was sufficient to alert the district court that it needed to rule on the matter. We note that Duran's proposed findings and conclusions, which were filed simultaneously with the ones filed by Tony, did not reference the Probate Code cited to on appeal and did not give the opposing party a fair opportunity to meet the alleged objection. As such, Duran failed to preserve this argument for review by this Court, and we will not address it further. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) ("The [district] court had no opportunity to consider the merits of, or to rule intelligently on, the argument [the] defendant now puts before us.").

**CONCLUSION**

**{21}** For the reasons set forth above, we affirm the judgment of the district court.

**{22}** **IT IS SO ORDERED.**

8

LINDA M. VANZI, Judge

**I CONCUR:**

JONATHAN B. SUTIN, Judge

RODERICK T. KENNEDY, Judge (specially concurring).

**KENNEDY, Judge (specially concurring).**

**{23}**  I concur fully with the Majority Opinion in denying the personal allowances, which I believe the statute causes to expire with the spouse whose personal entitlements they are and the denial of Duran's claim for reimbursement for the property taxes. I have serious reservations that would ordinarily cause me to dissent from affirming the distribution of Pilar's share of Eligio's Estate. It appears to me that the findings of the district court and decision to do so were not supported by substantial evidence, and the district court might not have had any subject matter jurisdiction over Pilar's estate. However, as noted by the majority, Duran's general objection that the district court had no power to distribute Pilar's interest to persons who might be her heirs was not preserved, waived, or, in my view, adequately presented so as to be incapable of resolution. My dissatisfaction with the litigation is therefore secondary to my concurring with the result as to the distribution of Pilar's interest in Eligio's Estate. I will, however, state my reservations about what I believe to be the district court's overreaching.

**{24}**  Duran's participation in this case was originally as a substituted personal representative of Eligio's Estate to occupy Pilar's shoes. Eventually, the district court found only that Duran was one of Pilar's three children. It also found that Duran had two siblings, since deceased, who had nine children among them. It then proceeded to conclude that those persons were Pilar's heirs and entitled to her interest by representation. The district court divided Pilar's share and ordered it distributed to persons, including Duran, whose heirship was determined, according to the quoted transcript, based on no more than their inclusion in the petition for probate in Doña Ana County. I believe that bypassing what appeared to be the separate and unrelated probate action concerning Pilar's estate, by making determinations of heirship concerning persons who were not a part of Eligio's probate, was beyond the district court's power to act.

**{25}**  "[D]istrict courts sitting in probate possess only the jurisdiction conferred upon them by statute." *In re Estate of Harrington*, 2000-NMCA-058, ¶ 14, 129 N.M. 266, 5 P.3d 1070. "There are three jurisdictional essentials necessary to the validity of every judgment, to wit, jurisdiction of parties, jurisdiction of the subject matter, and power or authority to decide the particular matters presented[.]" *In re Field's Estate*, 40 N.M. 423, 425, 60 P.2d 945, 947 (1936). In this case, NMSA 1978, Section 45-1-302(A)(1) (1978) (amended 2011) conferred

9

upon the district court authority over "formal proceedings with respect to the estates of decedents, including determinations of testacy, appointment of personal representatives, constructions of wills, administration and expenditure of funds of estates, determination of heirs and successors of decedents and distribution and closing of estates[.]" The only decedent's estate before the court in this case was that of Eligio. Determinations of Pilar's testacy, existence of any personal representative, and determination of heirs and successors-in-interest of Pilar and the distribution and closing of her estate were all matters explicitly and implicitly determined by the district court in this case. All derive from Pilar's estate and, hence, were not before the district court whose case was limited to Eligio's intestate estate. Undertaking to handle matters that were the essence of another estate (Pilar's) not before the district court was beyond this district court's jurisdiction.

**{26}**   Duran requested distribution of Pilar's portion of Eligio's Estate to him as personal representative of her estate. The same request—handing over Pilar's share to Duran in his representative capacity—was made by Tony. Even during the curious conversation cited by this Opinion, Duran's attorney is steadfast in his desire for distribution to Duran alone. Tony's attorney continued to support the distribution to Duran, although it was obviously out of little more than fear of the prospect of getting things wrong and becoming liable to unknown heirs. Citing to the conversation over the "other heirs," rather than supporting a waiver by Duran, the Opinion enshrines the central problems of this case. First and foremost, there is no verified evidence in the record that Duran really is the personal representative of Pilar's estate, as there is no documentation of any probate of her estate, which he asserted was attached to various pleadings, but never appears in the record. Second, the transcript identifies the other "heirs" by no more than their inclusion in the "petition" for the Doña Ana County probate case. This seems like a lack of substantial evidence.

**Substantial Evidence**

**{27}**   Duran's counsel's answers to the court concerning the identification of the heirs studiously evade any affirmation that any actual determination of heirship has been made in Doña Ana County. Duran's counsel says no more than there has been no determination of heirship concerning them and that the only document in the supposed probate that names them is the caption of the petition. It is the "copy of the petition which states who they are" that the district court deems sufficient, if Tony's counsel relied on it, and nowhere does Tony's counsel say he found any such thing to be reliable. The district court's conclusion of "[t]hat should be enough if you relied on that" is not a statement that smacks of sufficient evidence as to this case properly making any distribution to Pilar's heirs. Indeed, counsel for Tony asserts with equal authority as anything else that Duran is "not the personal representative of Pilar's estate," and asserts possible exposure to claims "from every one of her heirs" without more documentation. Dutifully, Tony's counsel included the information in his findings and conclusions, which were adopted by the district court. Indeed, in the district court's order, no heir of Pilar's estate is named but Duran with the rest mentioned only as descendants of Duran's deceased siblings of whose existence there is no primary

evidence in the record. The award to these ten persons is therefore based on no more than judicial *ipse dixit,* concluding without support that Tony's side had relied on the information.

**{28}** Duran is similarly less than forthcoming about his entitlement as personal representative to force a distribution to him. Unfortunately, Duran's sole citation to *Medina* does not stand for the proposition of "property must be given to the representative." That proposition is dicta. *Medina* might, however, stand for the salutary proposition for this case that Duran should have gotten an order from the Doña Ana County probate case to be duly provided to the district court that identified him as the personal representative of Pilar's estate. Such an order may have further authorized him in that capacity to take possession of Pilar's entitlement from Eligio's Estate to be probated in her estate's case elsewhere. No such situation existed.

**{29}** Both parties were singularly unhelpful in providing any less speculative authority. The impetus to distribute Pilar's share to persons whose identity is neither established in the evidence, nor named in the district court's order, appears to be solely the district judge's, who was singular in the pursuit of a bad idea not supported or requested by either party. Consequently, the district court denied the sole distribution request and, apparently sua sponte, concluded to distribute Pilar's marital intestate portion of Eligio's Estate to Pilar's unidentified heirs in intestacy.

**{30}** The distribution of assets by Rio Arriba County district court that are part of the separate estate of another deceased person (Pilar), which estate is not before the court, and in fact supposedly the subject of a separate action in Doña Ana County seems to be a problem. If the district court had no jurisdiction to act with regard to Pilar's estate, its action is void ab initio regardless of Duran's preservation problems.

**{31}** I do question whether venue over Pilar's estate is proper in Rio Arriba County. Because Pilar died in Doña Ana County, and the probate of her estate was supposedly filed there, I also question whether the Rio Arriba County district court had the authority to decide matters that were in play simultaneously in another probate action concerning another estate in another district court. Perhaps ordering Pilar's share to be held in the Rio Arriba district court registry for later release on authority of the Doña Ana County district court, or transferring Pilar's share to the registry of the Doña Ana County district court would have been the proper way to go. Given Duran's slim proof of his claim for reimbursement and insistence that the entire proceeds be paid to him, I cannot help but think that his representations that all of Pilar's heirs were ascertained and were not disputing that they were the only heirs, may be worthy of some healthy skepticism. Perhaps that is why the district court did not want to make a grant of Pilar's interest in Eligio's Estate to Duran alone. Questions like that would best be resolved in Doña Ana County and not by the district judge in this case. However, writing as I do to point out what questions I have about the evidence and procedure in this matter is not tantamount to litigating the parties' interests. Since Duran did not pursue these avenues, I concur with the majority in all respects.

11

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for *Duran v. Vigil*, No. 31,184**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review
Substantial or Sufficient Evidence

**CIVIL PROCEDURE**
Equitable Claims or Defenses
Estoppel
Laches

**JURISDICTION**
District Court
Subject Matter
Venue

**TAXATION**
Property

**WILLS, TRUSTS, AND PROBATE**
Allowances
Distribution
Intestacy
Personal Representative

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction