The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **January 23, 2024**

**No. A-1-CA-40119**

**IN THE MATTER OF THE ESTATE**
**OF GEORGE D. KUCHAN, Deceased,**

**JOHN KUCHAN, Personal Representative**
**of the ESTATE OF GEORGE D. KUCHAN,**

Petitioner-Appellant/Cross-Appellee,

v.

**CHARLES NIXON, Personal Representative**
**of the ESTATE OF MURLENE KUCHAN,**

Respondent-Appellee/Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Johnston
Albuquerque, NM

Pottow Law, LLC
Michael T. Pottow
Santa Fe, NM

for Appellant

Alsup Law Office
Gary D. Alsup
Clayton, NM

for Appellee

**OPINION**

**MEDINA, Judge.**

{1}     Petitioner John Kuchan—as the personal representative of the Estate of George D. Kuchan (the Estate)—appeals and Respondent Charles Nixon—as the personal representative of the Estate of Murlene Kuchan—cross-appeals from a district court order granting in part and denying in part Respondent's motion for partial summary judgment concerning the distribution of the Estate after trial and entry of the final judgment. Petitioner argues on appeal that the district court erred by failing to apply the doctrine of judicial estoppel to Respondent's claim that a portion of the property in the Estate—the West Tract—was community property. Respondent argues on cross-appeal that the district court erred by denying Respondent's claims of family allowance under NMSA 1978, Section 45-2-402 (1995); and personal property allowance under NMSA 1978, Section 45-2-403 (2011) against the Estate.

{2}     We hold that the district court did not abuse its discretion when it rejected Petitioner's claim of judicial estoppel because Respondent did not successfully assume the West Tract was community property. We additionally hold that the Estate of Murlene Kuchan was entitled to family and personal allowances because Murlene made the claim while she was the surviving spouse of George. We therefore affirm in part and reverse in part

## BACKGROUND

{3}     George Kuchan died intestate on July 30, 2019. At the time of his death, George was married to Murlene Kuchan. George was survived by Murlene and three children from a previous marriage. Two children disclaimed their interest in the Estate in favor of Petitioner.

{4}     On September 19, 2020, Murlene petitioned the district court to appoint her as the sole personal representative of the Estate. The district court appointed Murlene as personal representative, and ordered unsupervised administration without bond for formal probate proceedings. Murlene filed the first inventory and appraisal of the Estate on January 13, 2020. Relevant to Petitioner's appeal, the inventory and appraisal listed a "[c]ommunity lien against lands in Sections 8, 9 and 17, Township 27 North, Range 23 East [(the West Tract)]" for $75,000. In explanation, Murlene stated that she "acknowledges the separate character of inventoried lands in [the West Tract]," but was entitled to a community lien due to improvements made to the property while Murlene was married to George. Relevant to Respondent's cross appeal, Murlene also stated that she "elects to exercise her claim for a Spousal Allowance and Personal Property Allowance against [the West Tract] for a total additional claim of $45,000." Murlene also filed a notice of intended distribution on January 13, 2020, stating, "An undivided 1/4 interest in [the West Tract] will be conveyed to Murlene Kuchan as the surviving spouse," and the "remaining

2

undivided 3/4 interest in [the West Tract will] be conveyed to Murlene Kuchan in satisfaction of the Personal Property Allowance and Family Allowance and in satisfaction of the community lien."

{5}     Petitioner—before becoming personal representative of the Estate—filed a response to the intended distribution, requesting that all separate property, including the West Tract, remain a part of the residue of the Estate and objecting to the family and personal property allowances "insofar as they include any property identified as separate property" of the Estate. Petitioner also served discovery on Murlene about the community lien. In her responses to Petitioner's discovery requests, Murlene stated, "George had acquired a portion of the West [Tract] and exchanged other separate property . . . to consolidate the West [Tract] early in our marriage. That property is what I am referring to as the separate property in the [i]nventory." Murlene also produced tax documents showing that George was billed separately for the West Tract. Murlene filed an amended inventory and appraisal on April 1, 2020, in which she made the same statement acknowledging the separate character of the West Tract and asserted the same claims for family and personal property allowances. The district court entered a scheduling order setting the matter for a two-day bench trial beginning February 4, 2021.

{6}     Murlene Kuchan passed away on August 27, 2020. Petitioner filed a request with the district court to succeed Murlene as the sole personal representative of the

Estate, which the district court granted. Respondent was appointed the personal representative of the Estate of Murlene Kuchan. Respondent filed a notice of intent to continue pursuing Murlene's claims of family and personal property allowances and the community lien against the West Tract.

{7} Respondent then filed for partial summary judgment pursuant to Rule 1-056 NMRA, in relevant part, for (1) establishment that the West Tract was held by George and Murlene as community property based on deed records of the property, not separate property as Murlene had previously stated; and (2) satisfaction of the family and personal property allowances Murlene was entitled to as the surviving spouse of George under Sections 45-2-402 and -403. In response, Petitioner argued (1) the district court should judicially estop Respondent from claiming the West Tract as community property because Murlene took the position that the West Tract was separate property earlier in the probate proceedings; and (2) the family and personal property allowances could not be transferred to the Estate of Murlene Kuchan because they are only for the personal benefit of the surviving spouse, citing to *In re Estate of Vigil*, 2012-NMCA-121, 296 P.3d 1209, for support. Respondent replied that Petitioner had not raised a factual issue with respect to any of Respondents uncontested material facts and had not demonstrated the elements supporting application of the doctrine of judicial estoppel: (1) Murlene did not successfully assume the position that the West Tract was separate property in the

context of a judicial proceeding; (2) Petitioner failed to establish prejudice by the change in position regarding the identification of the West Tract as community property; and (3) it would be unjust to apply judicial estoppel on the basis of Murlene's mistake of fact or mistake of law with regard to the West Tract. Respondent also replied that Murlene's estate was entitled to Murlene's family and personal property allowance claims because she survived the decedent by more than 120 hours.

{8} The district court orally granted Respondent's motion for summary judgment to establish the West Tract was community property, but denied Respondent's motion on satisfaction of the family and personal property allowances at the motion hearing. However, in its written order the district court denied the motion for partial summary judgment relevant to the issues on appeal. The district court first concluded that the "doctrine of judicial estoppel does not apply for two reasons. First, because Murlene Kuchan did not 'successfully' assume the position that the [West Tract was] separate property" because "no adjudication was made on the merits involving that position." "[S]econd, the change of position by [Respondent] after [Murlene's] death has not prejudiced [Petitioner] because he acquiesced to nothing and gave nothing up by relying on that position." But Murlene's previous statements in the inventory and appraisals did "operate to alert the [district c]ourt to a specific fact showing that there is a genuine issue for trial with regard to whether [the West Tract is]

5

community or separate property." The district court further denied Respondent's request for the allowances and found that it was "bound by the holding in *In re Estate of Vigil*, 2012-NMCA-121, ¶ 13" that "our Legislature did not intend these allowances to be transferred from the decedent's [E]state to the [E]state and heirs of the surviving spouse."

{9}   Following a bench trial in May 2021 the district court allowed both parties to submit requested findings of fact and conclusions of law. Petitioner requested the district court conclude in part that he "was prejudiced by the change in position regarding [the West Tract] because the change did not occur until after Murlene Kuchan's death, thereby preventing him from taking her testimony concerning the character of the property." The district court concluded in its final order that the West Tract "was the community property of George Kuchan and Murlene Kuchan at the time of George Kuchan's death." The district court also reiterated "the doctrine of judicial estoppel does not apply to statements made by Murlene Kuchan in previous inventories filed in this case," and "the Estate of Murlene Kuchan is not entitled to family and personal property allowances, even though Murlene Kuchan would have been entitled to these allowances during her lifetime." These appeals followed.

## DISCUSSION

{10}   We begin our review with Petitioner's contention that the district court abused its discretion by failing to apply judicial estoppel to Respondent's claim that the West Tract was community property. Petitioner does not challenge the district court's ultimate finding that the West Tract was community property. We hold that the district court did not abuse its discretion when it rejected Petitioner's claim of judicial estoppel, and therefore affirm. We then turn to Respondent's argument that the district court erred by denying his claims for family and personal property allowance against the Estate. We hold that the Estate of Murlene Kuchan was entitled to the allowances because Murlene made the claim while she was the surviving spouse of George. We therefore reverse the district court.

## I.      Petitioner's Appeal

{11}   Petitioner argues that Respondent should be judicially estopped from arguing that the West Tract is community property because of Murlene Kuchan's initial statements that the West Tract was separate property. "The doctrine of judicial estoppel prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Laughlin v. Convenient Mgmt. Servs., Inc.*, 2013-NMCA-088, ¶ 16, 308 P.3d 992 (internal quotation marks and citation omitted). To apply judicial estoppel:

> First, the party against whom the doctrine is to be used must have successfully assumed a position during the course of litigation. Second, that first position must be necessarily inconsistent with the position the party takes later in the proceedings. Finally, while not an absolute requirement, judicial estoppel will be especially applicable when the party's change of position prejudices a party who had acquiesced in the former position.

*Id.* (internal quotation marks and citation omitted).

{12} Petitioner argues Respondent successfully assumed the position that the West Tract was separate property by (1) Murlene's statements in the inventories and appraisals she filed; (2) Murlene's responses to interrogatories; (3) Murlene's pattern of behavior over the course of her marriage to George; (4) Murlene producing tax documents showing George was billed separately for the West Tract; and (5) by Murlene filing a lien against George's separate property in the West Tract. Petitioner also argues that changing position on the nature of the West Tract from separate to community property is necessarily inconsistent. Finally, Petitioner argues he was prejudiced because he relied on Murlene's statements that the West Tract was separate property and therefore failed to obtain testimony to rebut New Mexico's presumption that property acquired during a marriage is community property. *See* NMSA 1978, Section 40-3-12(A) (1973) ("Property acquired during marriage by either husband or wife, or both, is presumed to be community property.").

{13} Petitioner acknowledges that appellate courts generally review the application of judicial estoppel under an abuse of discretion standard, but suggests that we apply

8

a de novo standard because "[t]he district court's conclusion that the doctrine of judicial estoppel 'does not apply' to the facts of the case is a legal conclusion." We decline to do so. "The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law, while the issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion." *United Properties Ltd. Co. v. Walgreen Properties, Inc.*, 2003-NMCA-140, ¶ 7, 134 N.M. 725, 82 P.3d 535. Petitioner is not asking us to review whether judicial estoppel can be applied at all, but whether the district court properly applied it. We "review the proper application of judicial estoppel under an abuse of discretion standard." *Laughlin*, 2013-NMCA-088, ¶ 15; *see Vescio v. Wolf*, 2009-NMCA-129, ¶ 11, 147 N.M. 374, 223 P.3d 371 ("Where a district court denies equitable relief we review the matter for abuse of discretion." (text only) (citation omitted)). Based on the record below, we hold that the district court did not abuse its discretion when declining to apply judicial estoppel and explain.

{14} The record does not establish that judicial estoppel is appropriate here because Respondent did not "successfully assume" that the West Tract was separate property. "The primary purpose of the judicial estoppel rule is to prevent parties from 'playing fast and loose with the court' by *successfully* arguing one position and then later adopting a position inconsistent with the first." *Keith v. ManorCare, Inc.*, 2009-

9

NMCA-119, ¶ 39, 147 N.M. 209, 218 P.3d 1257 (quoting *Citizens Bank v. C & H Const. & Paving Co.*, 1976-NMCA-063, ¶ 36, 89 N.M. 360, 552 P.2d 796). Under New Mexico law, a party successfully assumes or argues a position when the party takes that position before a judicial body, that position is at issue, and the party is ultimately successful. *See Wootton v. Vinson*, No. 32,290, mem. op. ¶ 14 (N.M. Ct. App. July, 14, 2014) (nonprecedential) (declining to apply judicial estoppel in a dispute over attorney fees to the plaintiff's argument that the fees were reasonable in part because the plaintiff "did not ultimately convince the district court that [her attorney] fees were unreasonable" earlier in the proceeding). *Compare Keith*, 2009-NMCA-119, ¶¶ 38-40 (declining to apply judicial estoppel to the defendant's argument that it did not employ the staff at the nursing home that caused the injury at issue because the record did not establish the defendant "successfully argued that it in fact was the employer of the staff," even though the defendant "colloquially referred" to the staff as its employees in discovery and other motions before the district court), *and Vigil v. N.M. Tax'n & Revenue Dep't*, 2022-NMCA-032, ¶¶ 28-29, 514 P.3d 15 (declining to apply judicial estoppel to the department's argument that an entity was not a valid corporation, in part, because taxpayers "have not shown that [the corporation]'s status was at issue" in a previous proceeding, and the department "therefore did not successfully argue or assume a position" on the corporation's status), *with Laughlin*, 2013-NMCA-088, ¶ 17 (finding the first

10

element of successfully assuming a position for judicial estoppel because the worker successfully assumed the position that his injuries were at a maximum medical improvement before the Worker's Compensation Administration when the worker later took the position that he was no longer at maximum medical improvement), *and Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶¶ 11-15, 147 N.M. 244, 219 P.3d 12 (applying judicial estoppel to prevent a defendant from arguing that worker's compensation was the exclusive remedy for the plaintiff's injury because the defendant had already successfully assumed and argued that the plaintiff did not have a worker's compensation claim before the Worker's Compensation Administration). Although Murlene stated in the inventory and appraisals and interrogatories that she believed the West Tract was separate property, Respondent did not successfully argue and therefore assume this position in a motion or at a hearing where the nature of the property was at issue.

{15} Petitioner relies on the analysis in *T.H. McElvin Oil & Gas Ltd. Partnership v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, ¶¶ 51-52, 440 P.3d 1277, *rev'd on other grounds*, 2017-NMSC-004, 388 P.3d 240, where this Court declined to apply judicial estoppel to the plaintiffs' argument and claim that they owned certain oil and gas rights to land in New Mexico as heirs of the deceased. *See id.* ¶¶ 15, 51-52. Petitioner cites to this Court's statement that judicial estoppel was improper because "the parties do not point to any evidence in the record that reflects

that [the deceased] affirmatively acknowledged their lack of ownership or right to the oil and gas interests in the property" during the deceased's probate proceedings. *Id.* ¶ 52. Petitioner argues here that Murlene did acknowledge a lack of ownership in her inventory and appraisal and interrogatories, and therefore judicial estoppel would be appropriate. We disagree. Although the lack of evidence was considered, this Court ultimately declined to apply judicial estoppel because the "record show[ed] an absence of any *legal position* taken by [the deceased] or their heirs in regard to the oil and gas interests in the property." *Id.* (emphasis added). In other words, this Court declined to apply judicial estoppel because the plaintiffs had not successfully assumed they had no claim to the oil and gas rights, which was supported by the lack of evidence. *See id.* Although here there is evidence that Murlene considered the West Tract separate property, which is not enough to establish that Respondent successfully argued or assumed that position before the district court.

{16}    Petitioner admits that "Murlene's position that the West Tract was George's separate property never ripened into a ruling or formal order at the district court." Petitioner instead cites to various out-of-state authorities to support his argument that Murlene and Respondent's actions alone are enough for us to apply judicial estoppel. We decline to look at those out-of-state authorities for guidance because our own authority squarely answers the issue presented and requires that a party "successfully argue" or "successfully assume" a position before the doctrine of

12

judicial estoppel can apply. *See Keith*, 2009-NMCA-119, ¶¶ 36-37, 39; *cf. Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 23, 132 N.M. 207, 46 P.3d 668 ("Judicial estoppel cannot be used against a party which espoused a position in an earlier case and lost and is now correctly stating the law that came from that decision."). Respondent could not be considered to have "successfully assumed" a position about the nature of the West Tract until filing the motion for partial summary judgment.

{17}     Further, we disagree that Petitioner was so prejudiced that judicial estoppel was appropriate. Although we acknowledge that the two individuals with the most knowledge of the nature of the property—Murlene and George—passed away before Petitioner could depose either of them on this question, the district court denied Respondent's request for summary judgment. Instead, the district court found that Murlene's statement in the inventory and assessment created "a genuine issue for trial with regard to whether [the West Tract is] community or separate property." As such, both Petitioner and Respondent were required to present evidence to establish the nature of the property—evidence such as Murlene's statements and tax bills for the West Tract. Therefore, Petitioner was not prejudiced by the district court's denial to judicially estop Respondent from arguing that the West Tract is community property. *See Keith*, 2009-NMCA-119, ¶ 44 (concluding that the plaintiff did not suffer prejudice for judicial estoppel by having to establish whether the defendant employed the staff at trial).

13

{18}   Ultimately, under the facts and circumstances here, Respondent "cannot be said to have been 'playing fast and loose' with the court, and judicial estoppel is therefore inapplicable in this case." *See Keith*, 2009-NMCA-119, ¶ 40. We therefore hold that the district court did not abuse its discretion.

{19}   Having resolved Petitioner's appeal, we now turn to Respondent's cross-appeal of the district court's order for summary judgment.

**II.     Respondent's Cross-Appeal**

{20}   Respondent contends that the district court erred by denying his request for family and personal property allowances under the reasoning outlined in *In re Estate of Vigil*, 2012-NMCA-121. Respondent argues that the plain language of Sections 45-2-402 and -403 do not place conditional or terminating language on the allowances and create a statutory right to the allowances for the surviving spouse. Respondent additionally cites to the family allowance provision of the Uniform Probate Code that includes terminating language that our Legislature did not adopt for Sections 45-2-402 and -403. *Compare* § 45-2-402, *and* § 45-2-403, *with* Unif. Prob. Code § 2-404(b) (amended 2019) (stating that for the family allowance, the "death of any person entitled to family allowance terminates the right to allowances not yet paid"). *See In re Estate of Jewell*, 2001-NMCA-008, ¶ 8, 130 N.M. 93, 18 P.3d 334 ("New Mexico adopted the Uniform Probate Code in 1975, [and] . . . New Mexico's language tracks the Uniform Probate Code with only minor variations."

14

(citations omitted)). Respondent's argument requires that we interpret provisions of the New Mexico Uniform Probate Code, NMSA 1978, Sections 45-1-101 to 45-9A-13 (1975, as amended through 2022), which we review de novo. *See White v. Farris*, 2021-NMCA-014, ¶ 12, 485 P.3d 791.

{21} We begin with an overview of the statutory framework at issue. Sections 45-2-402 and -403 govern the family and personal property allowances. Section 45-2-402 states, in relevant part, "[a] decedent's surviving spouse is entitled to a family allowance of thirty thousand dollars ($30,000)." Section 45-2-403 states that "[i]n addition to the family allowance, the decedent's surviving spouse is entitled from the estate to a value, not exceeding fifteen thousand dollars ($15,000) in excess of any security interest therein, in household furniture, automobiles, furnishings, appliances and personal effects." The New Mexico Uniform Probate Code defines "surviving" as "an individual [that] has neither predeceased an event, including the death of another individual, nor is deemed to have predeceased an event pursuant to Section 45-2-104 or 45-2-702." Section 45-1-201(A)(52). Both Sections 45-2-104(A)(1) and 45-2-702(A) clarify that a "surviving spouse" for purposes of allowances must have survived the death of the decedent by 120 hours and by clear and convincing evidence.

{22} Based upon the plain language of the statutes and legislative history of the statutes that predate New Mexico's adoption of the Uniform Probate Code,

Respondent asks that we overturn this Court's previous decision in *In re Estate of Vigil*. We decline to overturn *In re Estate of Vigil* because we agree with Respondent's alternative argument that *In re Estate of Vigil* is factually distinguishable and therefore does not control our analysis of the issue at hand. As such, we conclude that the district court erred in denying Respondent's request for the allowances under Sections 45-2-402 and -403. We explain.

{23} In *In re Estate of Vigil*, the decedent died intestate. 2012-NMCA-121, ¶ 2. Both the decedent and the surviving spouse had three children from prior marriages. *Id.* The district court appointed the surviving spouse and one of the decedent's children—Tony—as copersonal representatives of the decedent's estate. *Id.* ¶ 3. Neither Tony nor the surviving spouse acted to distribute the estate before the surviving spouse passed away seven years later and, at the time of her death, the decedent's estate had been administratively closed due to inaction. *Id.* ¶ 4. Tony then moved to reopen the estate, notifying the court that one of the surviving spouses' children—Duran—was appointed the personal representative of her estate and Duran intended to replace the surviving spouse as copersonal representative of the estate at issue. *Id.* The district court granted the motion to reopen. *Id.*

{24} Ten months later, Tony moved to set aside Duran's appointment as copersonal representative. *Id.* ¶ 5. Before that motion was ruled on, Duran filed a petition for "order of complete settlement adjudicating final distribution" of the estate. *Id.* Duran

stated that "disagreements have arisen between the copersonal representatives about the distribution" of the remaining asset of the estate. *Id.* (alternations and internal quotation marks omitted). Duran requested payment to the surviving spouse's estate of $45,000 for family and personal property allowances before distribution of the remaining assets, as well as the surviving spouse's one-fourth intestate share of the estate and reimbursement for payment of property taxes. *Id.* Tony filed a proposed distribution agreeing to distribute the one-fourth intestate share but opposed the grant of the family and personal property allowances. *Id.* ¶ 6.

{25} The district court held a hearing where both parties presented evidence and argument. *Id.* ¶ 7. The district court denied Duran's request for family and personal property allowances because the claims were precluded by laches and equitable estoppel or, alternatively, it would be inconsistent with the Legislature's intent to grant allowances to the surviving spouse's estate or heirs after death under Sections 45-2-402 and -403. *See In re Estate of Vigil*, 2012-NMCA-121, ¶ 7.

{26} On appeal, this Court affirmed the district court's denial of the allowances, concluding "that the Legislature did not intend that the personal allowances be transferred from the estate of the first spouse to the estate of the surviving spouse." *Id.* ¶ 9. Central to the *In re Estate of Vigil* Court's reasoning and interpretation of the allowances was that "[n]either provision specifically addresses what happens if the allowances are not claimed prior to the death of the surviving spouse." *Id.* ¶ 12.

17

However, the "separate allowances are designated specifically for the personal well[-]being of the surviving spouse and are not treated the same as amounts inherited from the decedent by will or intestate succession." *Id.* As such, "[i]t would serve no statutory purpose to transfer the allowances to the surviving—and in this case unrelated—heirs of a surviving spouse." *Id.* Therefore, the *In re Estate of Vigil* Court concluded "that our Legislature did not intend that statutory allowances unclaimed during the lifetime of the surviving spouse would then be transferred to the heirs of the surviving spouse." *Id.*

{27} *In re Estate of Vigil* is factually distinguishable from this case because Murlene claimed the allowances before she died, even if the allowances were not distributed before her death. Consequently, *In re Estate of Vigil* does not control our analysis of the issue at hand, contrary to the district court's conclusion. When compared to the facts in *In re Estate of Vigil,* it is clear that the facts here represent a unique circumstance not accounted for by the language of Sections 45-2-402 and -403 or this Court's holding in *In re Estate of Vigil*.

{28} Fundamentally at issue is whether Murlene claimed the family and personal property allowances under this Court's review of Sections 45-2-402 and -403's Legislative intent and holding in *In re Estate of Vigil*. We hold that she did. Sections 45-2-402 and -403 do not state what a surviving spouse must do to claim the allowances. The word "claim" means "[t]he assertion of an existing right" or "[a]

18

demand for money, property, or legal remedy to which one asserts a right." *Claim*, *Black's Law Dictionary* (11th ed. 2019). Murlene clearly claimed both allowances by filing the inventories and appraisals with the district court that notified all interested parties in the Estate that she asserted her right to both the family and personal property allowances.

{29} Unlike the surviving spouse in *In re Estate of Vigil*, Murlene requested the family and personal property allowances while she was the personal representative of the Estate. Further, the request occurred while the Estate was still open rather than first administratively closed and then reopened after her death, unlike the estate in *In re Estate of Vigil*. Finally, because Murlene requested the allowances, unlike the surviving spouse in *In re Estate of Vigil*, the request was not made for the first time by her personal representative or heirs. Although Murlene passed away before the distribution of the allowances, we cannot say that this case clearly falls into the circumstances described by *In re Estate of Vigil*—where the allowances would be "transferred from the estate of the first spouse to the estate of the surviving spouse" when the allowances went "unclaimed during the lifetime of the surviving spouse." *See In re Estate of Vigil*, 2012-NMCA-121, ¶¶ 9, 12.

{30} Petitioner emphasizes that the definition of "surviving" in the New Mexico Uniform Probate Code does not include the estate or heirs, and that the allowances are meant to benefit a living surviving spouse to support that *In re Estate of Vigil*

19

should control our analysis. We agree that the allowances are for "the personal well[-]being of the surviving spouse," *See In re Estate of Vigil*, 2012-NMCA-121, ¶12, but we believe that Petitioner's argument oversimplifies the facts established at the district court. Murlene survived George by approximately one year, and therefore necessarily incurred personal costs and expenses that the allowances were designed to mitigate. *See In re Estate of Jewell*, 2001-NMCA-008, ¶ 9 ("The purpose of the allowances is to ensure that a surviving spouse is not left penniless and abandoned by the death of a spouse." (internal quotation marks and citation omitted)). Sections 45-2-402 and -403 require that the surviving spouse survive the death of the decedent, not the distribution of the decedent's estate. And unlike in *In re Estate of Vigil*, Murlene herself claimed her right to the allowances while alive. *See* 2012-NMCA-121, ¶ 13 (stating that New Mexico case law does not support the position that a "surviving spouse's right to statutory allowances automatically passes to [the] estate following . . . death").

{31} Our decision is also supported by the strong public policy underlying the statutory allowances. The allowances "constitute a statutory entitlement" and "pass outside the will by operation of law." *See In re Estate of Jewell*, 2001-NMCA-008, ¶ 9. This entitlement applies "even if it means recovery must be made from a decedent's sole and separate property." *In re Estate of Salopek*, 2005-NMCA-016, ¶ 10, 137 N.M. 47, 107 P.3d 1. Under the New Mexico Uniform Probate Code, if

the allowances have been claimed, the Legislature "supplanted the flexibility of discretionary relief in favor of the certainty of a fixed allowance which is *afforded without conditions*, in a set amount, and apparently without regard for the size or composition of the estate." *Id.* (emphasis added) (internal quotation marks and citation omitted). Because Murlene claimed the allowances while alive as the personal representative of the Estate, she was therefore statutorily entitled to the amount even though the entitlement was not yet distributed by the Estate.

{32}     We again recognize that this case falls into the narrow category between the language of Sections 45-2-402 and -403 and this Court's decision in *In re Estate of Vigil*. However, the plain language and Legislative purpose of Sections 45-2-402 and -403, when read in conjunction with other provisions of the New Mexico Uniform Probate Code, do not prevent payment of family or personal property allowances to the estate of the surviving spouse if the surviving spouse properly claimed the allowances when alive but passed away before close of the estate. We hold that the district court erred by denying Respondent's request for payment of the family and personal property allowances to Murlene's estate. Therefore, we reverse the district court.

**CONCLUSION**

{33}     For the foregoing reasons, we affirm the district court's denial of the use of judicial estoppel and reverse the district court's denial of the family and personal

21

property allowances. We therefore remand for further proceedings consistent with this opinion.

{34}     **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**MEGAN P. DUFFY, Judge**